## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Luz M. Acevedo Vargas | CIVIL NO. |
| Plaintiff | RE: ADA AND RETALIATION HOSTILE ENVIRONMENT |
| v. | Plaintiff demands trial by jury |
| **Municipality of San Juan**; **Carmen Yulin Cruz Soto** in her personal and official capacity as Major of the Municipality of San Juan; **Marta Vera Ramírez** in her personal and official capacity as Director of the Office of Human Resources of the Municipality of San Juan**; Dr. Awilda Arroyo Torres** in her personal and official capacity as Director of Medical Services and Quality of the Municipality of San Juan; **Mr. Alfredo Martinez** in his personal and official capacity as Director of Human Resources of the Municipality of San Juan; **Dr. Lidy Lopez** in her personal and official capacity Director of the Health of the Capital of the Municipality of San Juan | |
| Defendant | |

## COMPLAINT

**TO THE HONORABLE COURT:**

 **COMES NOW,** the plaintiff through the undersigned attorney, and very respectfully states, alleges and prays:

### I. NATURE OF THE ACTION

 This is an action for money damages, injunctive and declaratory relief brought by Luz M. Acevedo Vargas (hereinafter referred to as "Acevedo" or "Plaintiff") against her employer Municipality of San Juan (hereinafter referred to as "Municipality") under the ADAAA and section 1983 of the Civil Rights Act and several other employees under section 1983 of the Civil Righst Act for retaliation in violation of Plaintiff's First Amendment Rights to freedom of speech.  Acevedo

brings this action to remedy the deprivation of rights secured under the laws and constitution of of the United States and laws of Puerto Rico.  The Municiplaity is also liable to Plaintiff under Puerto Rico Law 115 for retaliation and under Puerto Rico Law 44 for discrimination because of her disability.

Plaintiff is a Puerto Rico resident, lives in San Juan, Puerto Rico and qualifies as an individual with disabilities as defined by ADA. Plaintiff is limited to engage in the mayor life activity of walking. She requires the use of a walker and a wheelchair for mobility. Plaintiff has also excercised her freedom of speech under the Constitution of the United States and Puerto Rico and as a result she has been the vicitim of retaliation in violation of section 1983 of the Civil Rights Act by all Defendants in the official and personal capacities aftecting Plaintiff's terms and conditions of employment and creating a hostile environment under the ADAAA.

## II.  JURISDICTION

Pursuant to 28 USC section 1331 and 28 USC, this Court has been given original jurisdiction over actions which arise from the Defendant's violation of Title I and II of the American with Disability Act and section 1983 of the Civil Rights Act.  The supplemental jurisdiction of this Honorable Court under 28 USC Section 1367 is also invoked to entertain claims by Acevedo under Article 1802 and 1803 of the Puerto Rico Code, 31 L.P.R.A., 32 L.P.R.A. 5141 and 5142.  The proper venue lies in this district upon 28 USC 1331 and 1367.

Plaintiff timely filed a charge before the Equal Employment Opportunity Commission.   On February 1, 2017, the EEOC issue the right to sue letter in the above-mentioned charge. Consequently, Plaintiff is filing the present Complaint within the ninety (90) day period required by law.

## III. PARTIES

1.      Plaintiff is a Puerto Rico resident and lives in Guaynabo, Puerto Rico.

2.      The Municipality of San Juan is responsible for the illegal acts and violations committed by its employees and/or officials.

3.      Carmen Yulín Cruz Soto (herein after "Cruz Soto") is the mayor of the Municipality of San Juan. Defendant is sued in this case in her individual capacity and as Mayor of the Municipality of San Juan.

4.       Marta Vera Ramírez (herein after "Vera Ramírez") is the Director of the Office of Human Resources of the Municipality of San Juan. Defendant is sued in this case in her individual capacity and as Director of the Human Resources of the Municipality of San Juan.

5.      Dr. Awilda Arroyo Torres (herein after "Arroyo Torres") is the Director of Medical Services and Quality of the Municipality of San Juan. Defendant is sued in this case in her individual capacity and as Director of Medical and Quality of the Municipality of San Juan.

6.      Mr. Alfredo Martínez (herein after "Martínez") is the Director of Human Resources of the Municipality of San Juan. Defendant is sued in this case in her individual capacity and as Director of Human Resources of the Municipality of San Juan.

7.    Dr. Lidy López (herein after "López") is the Director of the Health of the Capital of the Municipality of San Juan. Defendant is sued in this case in her individual capacity and as Director of Health of the Municipality of San Juan.

8.    The Municipality is an employer under the ADA.

## II. FACTS

9.    Since the year 2000, Plaintiff served as Medical Director and Administrator of the CDT Arnaldo J. Garcia of the Luis Llorens Torres Public Housing Project of San Juan. Her supervisors were Dr. Ibrahim Pérez and Lcda. Carmen Graulau.

10.   On July 24, 2000, Plaintiff received a letter of intent of dismissal dated June 21 2000, signed by Ms. Yolanda Lamb, Director of Human Resources of the Municipality of San Juan, which expressed the intention to dismiss her from her position.

11.   In a timely manner, Plaintiff filed a request for dismissal of charges based on the following: (1) that the investigation carried out by the Municipality was selective, discriminatory, poor and illegal; (2) the penalty applied was disproportionate to the penalty imposed on other people, and; (3) that the charges are not maintained or commensurate to the light of the applicable regulations.

12.   Because of the above, an administrative hearing was held before the Commission in charge to handle grievances and personnel matters in the municipality of San Juan.

4

13.    The Commissioner who presided over the hearing, attorney Rosario Pacheco issued a report dated January 30, 2001. The report recommended a suspension of employment and salary for 15 consecutive days.

14.    Subsequently, Plaintiff received a letter of dismissal dated June 8, 2001. This letter mentioned three additional violations to the Rules, which had not been notified in the Letter of Intent, and therefore were not subject to adjudication in the Informal Hearing before Commission that handled grievances and personnel matters in the municipality of San Juan.

15.    Plaintiff timely filed a complaint before the Commission Administration System of Human Resources. After multiple procedural the Appellate Commission, on 19 July 19, 2012, determined that the Municipality of San Juan violated the due process of law and ordered modification of the disciplinary measure for replacing the dismissal by a suspension of employment and salary for a period of 15 days, to reinstate the employee in her position and back pay.

16.    The Municipality of San Juan filed an appeal to the Court of Appeals of Puerto Rico, the determination of the Appellate Commission. The Court of Appeals, issued a Resolution on April 19, 2013, to confirm the Appellate Commisions's determnnination.

17.    On June 12, 2013, Plaintiff requested, through a written communication, the reinstatement to her post and to delivery of documents regarding the back pay and

other aspects of the reinstallation. However, defendant refused to hand over the documents requested and to proceed with the reinstallation.

18. After a lengthy process of application, monitoring, multiple communications requiring the delivery of documents and the reinstatement, the municipality of San Juan, handed over most of the documents on April 10, 2014.

19. Approximately, on April 11, 2014, Plaintiff went to the Municipality to complete the paperwork for her reinstatement, which was planning to be effective on April 16, 2014.

20. The defendants, at the time, had failed to identify the position in which Plaintiff was to be reinstated nor the salary that was going to be granted to her.

21. On July 27, 2014, Plaintiff sustained a fracture of the tibia in her right leg, which resulted in the loss of 15 cm of bone. Plaintiff underwent surgery on several ocassions and had to receive bone graft. An external fixator was installed to help the growth of bone and bring the leg to its original length.

22. During the reinstallation process Plaintiff was still in recovery, since the wound on her leg and the process of bone growth had not been completed.

23. Notwithstanding the above, during the recovery to comply with the requirements of the Municipality, Plaintiff went to the municipality to complete the process of reinstatement. Because of these efforts her leg was affected and infected, began to ooze, the recovery process stopped and required an emergency surgery again.

24. Plaintiff required specialized medical treatment. The wound had an external fixator for approximately 9 months with bone graft to stimulate the growth of bone of the leg.

25. Because of her dissability, Plaintiff requires the use of a wheel chair or a walker to move around.  This does not affect Plaintiff to perform the essential functions of her job but requires adequate working facilities, in accordance with the requirements of the ADA, with which the defendants are in total violation.

26. Due to the operation and recovery, Plaintiff could not be reinstated until April of 2015.

27. Plaintiff is still in recovery, continues to use a walker and a wheelchair for mobility, cannot climb stairs, need assistance to be able to perform functions, personal toiletries and personal care.

28. As of April 2015, defendants did not have a clear idea of the position and salary to be assigned to Plaintiff. The reinstallation process was plagued of disputes and irregularities which delayed the same.

29. Acevedo was finally reinstated on July 16, 2015, in the position of Chief Medical Officer, in the clinic (CDT) Dr. A. Oliveras War of Sabana Llana, located at C/8 Esq Plots Falú in the village of Rio Piedras, Puerto Rico, behind the school Gerardo Selles, near the Monte Hatillo housing complex.

30. Prior to her reinstatement to the above manetioned position and site, Plaintiff had specifically requested defendant Dr. Arroyo and Dr. Lopez not to assigne her to said

facilities because she knew that the same failed to comply with ADA and were not proper facilities for employees with disabilities. Dr Lopez told Plaintiff that the Mayor needed her in said facilities and that she was required to be assigned to the same. Plaintiff was obliged to accept said designation against her request and her will.

31. The office assigned to Plaintiff is in the basement of the facilities, away from employee she is supposed to supervise and does not have adequate facilities to accommodate Acevedo's dissability. The facilities and Plaintiff's office are very humid, with mold, dirty air conditions vents, with an obsolete computer. The bathroom is very small, Plaintiff barely can enter in her wheel chair and was assigned to be the male bathrrom. The bathroom fails to comply with ADA with very heavy doors. The parking space assigned for disable persons fails to comply with ADA in as much as does not provide a proper ramp and fails to comply with the dimensions required by the law. The facilities also have several heavy double doors that prevents a person in a wheel chair or with other type of disabilities to properly handle them.

32. Since her reinstatement in the above-mentioned facilities Plaintiff brought to the attention on several occasions to Dr. Lidy López Morales, Mayor Carmen Yulin Cruz, Marta Vera and Dr. Awilda Arroyo Torres the poor conditions of the offices in which she was reinstated and its failure to comply with ADA requirements. The above-named Defendants in violation of the ADA and because of Plaintiff continued efforts and expressions that the municipality comply with a safe and secure facility to work, attend patients and ADA compliant, the failed to comply with their duties

8

under the law towards Plaintiff affecting Plaintiffs rights under the ADA and the terms and condition of her employment.  They failed to address Plaintiff's above complaints and as a result also the Mayor and defendant Vera also failed to comply with their duties and the requirements of the Judgment issued in favor of Plaintiff by failing to pay her the back pay owed to her and failing to recognize the vacation and sick leave Plaintiff was entitled to because of the reinstallation.

33.   On several occasions after her reinstatement Plaintiff wrote to defendant Vera requesting the municipality to recognize her vacation and sick leave that she was owed because of her reinstatement as an employee to the Municipality and the Municipality and defendant Vera failed to comply with Plaintiff's requirements and failed to comply with the requirements of the judgment in favor of Plaintiff. Defendants retaliation against Plaintiff when as far as instructing that Plaintiff not be paid sick leave because allegedly she did not had any sick leave available, when the Municipality owed Plaintiff more than thirteen years of back pay, vacation and sick leave.

34.   Finally, on June 16, 2016 because of Plaintiff's continuos expressions and requirements that the Municipality comply with its duty of public policy of providing a safe environment for employees, patients and and ADA complying environment, ocular inspection of the facilities was ordered by the municipality. Present in that ocular inspection was Ms. Ileana Prieto Roig, Special Assistant to the Mayor.

35.   On June 17, 2016 Ms. Ileana Prieto Roig send a memo summarizing the findings of the ocular inspection in which Plaintiff's complaints regarding the failure to provide

9

a safe and ADA compliance environment was admitted.  The memorandum states that between other issues the facilities had the following problems: (1) the Laboratory in the facilities did not had a cooler; (2) the doors of the facility were extremely heavy and closed abrupily compromising the safety of the patients and employees; (3) there was a los of humidity, dust and a smell of chemicals products; (4) that the floor of some areas of the facility was damaged as a result of the roots of a nearby tree; (5) the doors of the bathroom failed to comply with ADA; (6) the roof was damaged and had water filtretations.  Notwithstanding the above and that all Defendants had knowledge of the state of the facilities, nothing has been done to correct them.

36.     Furthermore, at the time of the filing of this complaint defendants Municiplaity, Mayor Carmen Yulin Cruz and defendant Vera continue in violation of the order of the Appellate Commission, as confirmed by the Court of Appeals of Puerto Rico and have failed to comply with their duty under the law to provide Plaintiff with the payment and recognition of all her salary and benefits owed, which amount to a sum no less than $945,738.13 plus pre-and post judgment interest.

37.     Defendants failure to comply with the Judgment in favor of Plaintiff, the designation of Plaintiff to a facility that Defendants knew were not ADA compliant and serious safety issues, Defendants failure to address Plaintiff continouos request for them to comply with ADA and provide a safe working environment constitute not only discrimination under the ADA and retaliation because of her opposition to the municipalities discriminatory treatment, but also constitute a violation of Plaintiff's constitutional right to free speech under section 1983 of the Civil Rights Act.  All

Defendants in their individual capacity had a duty as employees of the Municipality to act so that the municipality could provide Plaintiff with an ADA compliant and healthy facility, but they failed to do so in retaliation because of her opposition to the municipalities discriminatory treatment and Plaintiff's exercise of her constitutional right to free speech under section 1983 of the Civil Rights Act.

### CLAIMS UNDER ADA

36.    Plaintiffs reiterate the allegations included in paragraphs 1- 35 of this complaint.

37.    Plaintiff has been discriminated because of her disability and the record of her disability under the ADAAA in as much as the municipality failed to provide Plaintiff reasonable accommodation under the ADA by not providing Plaintiff with an ADA compliant parking space, an ADA compliant bathroom, office and equipment.  She has also been subject of a hostile environment because of her disability in as much as she has been forced to work in a facility that failes to comply with the ADA.

38.    The EEOC Regulations continues to define a person with a "record of" disability as an "individual [who] has a history of, or has been misclassified as having, a mental of physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1), 74 Fed. Reg. at 48443.

39.    The Regulations state, however, that whether an individual has a "record of" disability "shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." 29 C.F.R. § 1630.2(k)(2), 74 Fed. Reg. at 48443.

40.    Some examples of "record of" disabilities include a person with a past diagnosis of prostate cancer who, after treatment, is told that he "no longer has cancer," 29 C.F.R. §

11

1630.2(k)(1)(i), 74 Fed. Reg. at 48443, and a person who was misdiagnosed in the past with bipolar disorder and hospitalized because of what was in actuality a temporary reaction to medication. 29 C.F.R. § 1630.2(k)(1)(ii), 74 Fed. Reg. at 48443.

41.     The EEOC also confirms in the Regulations that "coverage under the 'record of' prong … does not depend on whether an employer relied on a record (e.g., medical, vocational, or other records that list the person as having a disability) in making an employment decision.

42.     An employer's knowledge of an individual's past substantially limiting impairment relates to whether the employer engaged in discrimination, not to whether an individual is covered." EEOC Q&A, *supra*, Question 19.

43.     The EEOC Regulations also clarify that a "record of" disability will support a failure-to-accommodate claim. 29 C.F.R. § 1630.2(o)(4), 74 Fed. Reg. at 48443; 29 C.F.R. § 1630.9(e), 74 Fed. Reg. at 48444; 29 C.F.R. Part 1630 App., §§ 1630.2(o) and 1630.9(e), 74 Fed. Reg. at 48449.

44.     As the owner, lessor, leese or operator of the subject premises, Defendant is required to comply with ADA. To the extent the property, or portions thereof, existed prior to January 26, 1993 ("pre-existing facility"), the owner, lessor, lessee, or operator has been under a continuing obligation to remove architectural barriers at that property whose removal was readily achievable, as required by 42 USC Section 12182. To the extent that the property, or portions thereof, were constructed after January 26, 1993 ("newly constructed facility"), the owner, lessor, lessee, or operator was under an obligation to design and construct such facilities such that they are readily accessible to and unable by individuals with disabilities, as required by 42 USC Section 12183. To the extent that the facility, or portions thereof, were altered in a manner that affects or could affect its usability ("altered facility"), the owner, lessor, lesee, or operator was under an obligation to make such alterations in such a manner that, to the maximum extent feasible, the altered portions are

12

readily accessible to and usable by persons with disabilities.

45.     Pursuant to 28 CFR part 36.404, all newly constructed facilities were required to comply with the Standards For New Construction And Alterations, set forth in Appendix A to 28 CFR part 36 ("ADAAA") to the maximum extent feasible. Pursuant to 28 CFR part 36.304 part 36.404, all altered facilities were required to comply with the ADAAG to the maximum extent feasible. Pursuant to 28 CFR part 36.304, all measures taken to comply with barrier removal requirements of 42 USC Section 12182 must comply with the ADAAG to the maximum extent feasible. Failure to comply with these requirements constitutes a violation of ADA.

46.     The violations that Plaintiff has encountered at CDT Dr. A. Oliveras of Sabana Llana, include, but are not limited to:

47.     Despite the fact the defendants knew of Dra. Acevedo's medical condition they assigned her to an office in the basement of the CDT of Sabana Llana, which flooded easily when there are heavy rains.

48.     The building does not have a functional elevator to allow Plaintiff to reach the operational areas of the CDT, easily and quickly, to perform the functions of supervision.

49.     The width of the doors does not meet the required width for a wheelchair. Acevedo has difficulty to enter, exit and move around to supervise the staff.

50.     The access doors are heavy and do not have an attachment to automatically open the same in order to facilite the entry and exit of Plaintiff around her work area.

51.     In the basement that she was assigned there is a small bathroom for men and is not suitable for people with disabilities. This bathroom is assigned to her.

52.     The bathroom does not have the appropriate equipment, railings, handbasin, WC, for physical limitations.  The height of the toilet is the regular not for people with a disability.

13

The same goes for the sink.

53.     Plaintiff does not fit with the wheelchair and just with the walker, which requires the assistance of a person to be able to go to the bathroom to perform her physiological functions in the normal way and represents an extraordinary effort and on many occasions, has to receive the help of her son.

54.     The only bathroom for the disabled at the CDT is in the emergency room on the first floor of the building.

55.     On the other hand, the parking lot assigned to Acevedo even when it is identified for disabled persons, does not have the measures required by law, for the disabled, or the rail required, which makes it difficult to get off and get into her car.

56.     The designated parking is located next to an electric generator and does not have space for a ramp.

57.     Regarding the Office Equipment, the computer that was assigned to Plaintiff to carry out her work is not located on her desktop despite having requested so.

58.     The computer was in another table, away from her desk, which requires Plaintiff to move constantly, in her wheelchair, between her desktop and the Bureau to carry out the work.

59.     Plaintiff has made several requests to correct these deficiencies, in accordance with ADA regulations but defendants have ignored the same and have not made any type of arrangements.

60.     The facilities, work area and equipment assigned by defendants as described above are in violation of the provisions of the Americans with Disability Act (ADA).

62.     Acevedo has suffered emotional damages, mental anguish and moral damages as a result of Defendants's violations.

14

63.     Plaintiff's emotional and economic damages are calculated in an amount not less than $ 1,000,000.00 which must be double as required by the statute.

64.     Defendants' actions are a violation to Puerto Rico Law 44 and ADAAA. Defendant failure to pay Plaintiff the judicial award she is entitled to and the benefits she was awarded under the same constitute also retaliation under the ADAAA.  Defendant have failed to comply with the award because of Plaintiff request that her ADAAA rights be granted to her.

### RETALIATIONS AND HOSTILE ENVIRONMENT

65.     Plaintiffs reiterate the allegations included in paragraphs 1- 64 of this complaint.  All of Defendants adverse actions taken against Plaintiff are in violation of section 1983, violation of ADA retaliation provision and in violation of Puerto Rico Law 115 of December 20 1991 (Puerto Rico Anti retaliation Law).  Furthermore, Defendants in their individual capacity are liable to Plaintiff under section 1983 of the civil rights act because they have failed to act in accordance to their duties under the laws and as employees of the municipality, because Plaintiff excercised her rights of free speech under the united states constitution by bringing to the attention of the municipal authoprities and federal agencies the Municipality's failure to provide a safe medical facility and ADA compliant facilitiy for the public and the Municipality employees, including her.  All of the facts described bellow are known by all Defendants and they have failed to act and/or have acted in a retaliatory manner towards Plaintiff impeding that she receieves the proper treatment under the ADA as an employee of the municipality, that she be paid what she is owed as a result of the judgment enter by the Puerto Rico Courts and that she be able to work in an ADA compliance facility that is healthy physically and emotionally.

66.     Plaintiff Acevedo requested defendants not to be assigned to the CDT Dr. A Olivera of Sabana Llana because the facilities were not suitable for a person with disabilities. Co-

defendants Awilda Arroyo and Lidy López were notified that this structure did not have the necessary facilities for a person with disabilities.

67.     The office that was assigned to Plaintiff is flooded frecuently, there is fungus on the walls, the paint is pocketed by the humidity, air conditioning ducts are dirty and the files have mold.

68.     The desk that was assigned to Acevedo got wet on several occasions and at the bottom the wood or material that is made is billowing coat. The same goes for the credenza.

69.     The computer that was assigned to Plaintiff, at the time of the reinstatement was obsolete and with no memory, which did not allow it to carry out its functions. So she had to ask for a new computer, which arrived a month later.

70.     The technicians who were to install the computer intended to install the same in a corner on top of the credenza where stood the old one. Plaintiff explained that she could not access the same due to the condition of your leg, but they insisted on installing it in that place.

71.     Plaintiff had to show them the wound of her leg for them to agree to put it in another place, but did not want to put in on top of the desk as requested by Acevedo. They put the computer in a conference table in the office, because in that place there was an outlet out of the only two outlets.

72.     Each time Plaintiff had to use the computer and / or read the emails send via "Outlook", which was constant, she had to move from her desktop to the table where the computar was to do her work.

73.     The bathroom does not have the appropriate equipment, railings, handbasin, WC, for physical limitations.  The height of the toilet is the regular not for people with a disability. The same goes for the sink.

16

74.     The assigned parking, even when it is identified as for disabled persons, does not have the required measures for disabled persons, or the rail required. All this makes it difficult for Plaintiff to get off and get into her car.

75.     On the other hand, the CDT has multiple double doors without the forecasts and attachments so a disabled person can handle them and open them with ease.

76.     In addition to the above, defendants have not complied with by the Appellate Commission, as confirmed by the Honorable Court of Appeal of Puerto Rico and Plaintiff has yet to receive the back pay regarding the period of 10 years that she was illegally suspended from work and pay.

77.     Defendants knowing Plaintiff's health condition placed her in an office, in the basement of the building, away from her staff that she supervises, with difficult access because the facilities do not have automatic doors to allow easy mobility for Plaintiff to perform her functions.  Although the facility has an elevator, the same is not working most the time making it very difficult for Plaintiff to comply with her work duties.

78.     Acevedo occupies the positions of Chief Medical Officer and does not have an assigned Secretary. When she arrived to the CDT she was informed that the secretary for administration, Ms. Migdalia Malave, would carry out the functions of the secretary of the Medical Director and the Administrator of the Center. Malave indicated that she was the Secretary of the Administrator and that she had many tasks and could not assist her. However, the Administrator only goes to the center twice a week.  Moreover, the nursing supervisor has a secretary assigned.

79.     The employees have developed hostile attitudes toward Plaintiff, which causes not to follow her instructions.

17

80.     On February 3 of 2016, Plaintiff asked Malave to make a phone call and to send documents by fax, to which Mrs. Malave, expressed in annoying, hostile and aggressive matter *"..that I was tired of being reloaded with so much work, that every body gave her more work and that she was the secretary of the Administrator and that he wasn't going to do other jobs."*

81.     Also, when Plaintiff arrived at the Center, she found out that all the work of the Medical Director was delayed. The quality reports, credentials of the doctors and manuals for the operation of the Center were all dalayed.

82.     Plaintiff was given the task to request the office equipment necessary to begin to work, however such material did not arrive.

83.     Due to the above, Plaintiff had to buy with her own money, the office equipment to carry out the work.

84.     The center's administrative manuals were not up-to-date.

85.     Plaintiff requested to the Central Office of Health of the Municipality through the Secretary of co-defendant Arroyo the updated manuals but never arrived.

86.     At the time of be reinstated, plaintiff completed all documents requested by defendants to carry out the process.

87.     The documents were delivered personally to Mr. Alfredo Martínez, Director of Human Resources, who at that time certified to Plaintiff that she had completed the process and referred her to the Municipal Tower to complete the process of the Medical Plan and identification card.

88.     A month later, on May 20 of 2015, defendant sent an e- mail to Plaintiff dated May 13, 2015, to indicate that a new list of documents must be completed. This list was even more extensive tan the first one that they required.

18

89.     Defendants went to the extreme to require a copy of her tax returns of the last five (5) years, which is totally inappropriate, irrelevant and in violation of the privacy of Plaintiff.

90.     Later when she went to deliver the second group of documents requested she asked Mr. Martinez if after these documents, they were going to request her additional documents, to which Mr Martinez, responded in an aggressive manner.

91.     On May 13, 2015, plaintiff went to several meetings in the Department of Health of the Municipality from 8:00 am until 4 pm, without being able to have lunch.

92.     When Plaintiff was reinstated in April 2015, defendant delayed her first fortnight by four (4) months. It was not until July 2015, when she began to receive part of her pay.

93.     In the first three payments defendants only paid for the time worked, a period corresponding to sick leave, due to an operation on her leg. This is even though at the time of be reinstated, the municipality had to credit, by law, the licenses accumulated, in accordance with the Judgment issued by the PR Court of Appeals.

94.     The payroll corresponding to fornight from July 1 to 15 2015, was deposited in a bank account for which she had not authorized direct deposit.

95.     The payment was deposited in a bank account with First Bank, which Plaintiff closed a long time ago.

96.     When Plaintiff asked for an explanation defendants told her that the Office of Human Resources, brought the information of the old files of 2001, however they have updated her personal data at the time of reinstatement.

97.     This has resulted in the improper discounts made to an old loan balance of 2001 and an insurance policy that no longer exists, that on 2001, was eliminated. These erroneous payments made by third parties, are the sole responsibility of the defendants and must be repaid

19

to Plaintiff.

98.        When defendant dismissed Plaintiff in violation of the due process of law, only vacation days that she had accumulated were paid. Defendants did not pay the 83 days of sick leave that she had accumulated, under the pretext that she was dismissed from work.

99.        As to this date she has not been credited these days nor has accumulated the days of vacation and sick leave in accordance with the Judgment.

100.        To present defendant Municipality owes wages to Acevedo in the following ammounts and have failed to pay her these ammounts because of Plaintiff's protected speech under the constitution of the united states and her ADA charge before the EEOC:

    A.        Salaries owed $683,425.95.

    B.        Differential pay $18,480.00

    C.        Payment for Medical Shifts (Guardias) $77,000.00

    D.        Vacation Leave $85,000.24

    E.        Sick Leave        $51,013.94

    F.        Medical Plan $18,470.00

    G.        Christmass Bonus $15,525.00

    H.        Summer Bonus $5,800.00

Total amount $945,738.13 plus pre and post judgment interest.

101.        The relationship of actions committed by the defendant against the plaintiff constitute a pattern of retaliation and hostile environment, created by defendants to make life impossible in their work and to force her resignation of her position.

102.        These actions of the defendant against the plaintiff are solely and exclusively due to the fact of having exercised her right to defend herself from the arbitrary actions of defendants and in

20

violation of the due process of law. Also, because she has publicly express herself as to the Municipalities failure to comply with facilities in compliance with the ADA and failure to provide safe medical facilities for her, the municipality employees and the public.  Hence, Plaintiff's expressions before the Puerto Rico Courts, before the EEOC and Plaintiff expressions to Municipality employees and agencies, constitute protected speech under the Constitution of the United States and as a result of her protected speech, Defendant have failed to provide Plaintiff with reasonable accommodation, submitted her to work in an unhealthy working environment and facility and Defendant have failed also to pay Plaintiff the award granted to her by the Courts of Puerto Rico, because of retaliation for her to continually exercise her constitutional right to free speech.  All Defendants, including the Mayor have knowledge of Plaintiff protected speech and have failed to address Plaintiff request that her rigfhts under the law be granted.  Therefore, all Defendants in the official and personal capacities are liable to Plaintiff for her compensatory samages under federal and Puerto Rico law in amount no less that $2,000.000.  Pleues the Municiplaity is also liable to Plaintiff for the $945,738.13 in benefits and wages.

## REMEDIES

Plaintiffs most respectfully pray that this Honorable Court, after a jury trial, enter judgment against the defendants and that it:

a. Acevedo compensatory damages for her emotional and moral damages and her mental anguish.

b. Acevedo economic damages, including Defendat failure to comply with the payment of $945,738.13 plus pre-and post judgment interest as a result of the judgment issued by the Puerto Rico Courts in her favor.

c. Award Acevedo punitive damages.

21

d. Award Acevedo all benefits she has lost because of defendants's discriminatory treatment.

e. Award plaintiff the costs of this action, including reasonable attorney's fees, costs, and expenses.

f. Award pre-and post judgment interests.

g. Grant Plaintiff any such further relief as this Honorable Court may deem just, proper and equitable.

h. Trial by jury is demanded.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 2nd day of May, 2017.

**Frontera Suau Law Offices, PSC**
239 Arterial Hostos Avenue
Suite 305
San Juan, Puerto Rico 00918-1476
Telephone: (787) 250-1420
Fax: (787) 763-3286

By: **s/ Juan Manuel Frontera-Suau**
Juan Manuel Frontera-Suau
USDC-PR No. 214905
fronterasuau@yahoo.com